**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Jeffrey Marcus PEASE, Defendant–Appellee.**

**No. 96SA467.**

Supreme Court of Colorado, En Banc.

April 7, 1997.

Jeanne M. Smith, District Attorney, Fourth Judicial District, Gordon R. Denison, Deputy District Attorney, Ann C. Joyce, Deputy District Attorney, Colorado Springs, for Plaintiff–Appellant.

Dennis W. Hartley, P.C., Dennis W. Hartley, Colorado Springs, for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

This is an interlocutory appeal of the district court's order suppressing statements of the defendant, Jeffrey Pease, pursuant to C.A.R. 4.1. The district court suppressed Pease's statements from use at trial because the police deliberately failed to tell Pease that they had a warrant for his arrest. We reverse and hold that Pease's waiver of *Miranda*[1] rights was valid even though the police deliberately failed to tell Pease that there was a warrant for his arrest.

## I.

In September 1994, Colorado Springs Police Detective Richard Hunt obtained information concerning Pease's alleged sexual activity with a minor. Detective Hunt interviewed the minor and confirmed parts of the minor's account. He investigated Pease's prior criminal history, and prepared affidavits in support of an arrest warrant for Pease and a search warrant for his home. A judge signed both warrants on September 13, 1994.

Detective Hunt and several other officers went to Pease's home the next morning. They explained why they had come and began executing the search warrant. They did not tell Pease they had a warrant for his arrest. Pease agreed to go to the police station for an interview, in order to tell his side of the story. He was allowed to get fully dressed and was transported, in an unmarked police car and without handcuffs, to the police station.

Pease was led through a number of security doors into an interview room in the station, where he was given *Miranda* warnings and signed a written *Miranda* waiver form. Pease acknowledged that he understood his right against self-incrimination and his right to be represented by an attorney. Detective Hunt then questioned Pease for several hours, until the detective suggested that Pease take a polygraph test.

Pease, a college-educated professional, had prior experience with the process of arrest and with the criminal justice system. He testified that the police were polite and cordial throughout the encounter. Pease stated that he never felt pressured or uncomfortable. He did not feel that he was under arrest until the end of the interview. The interview ended when Detective Hunt asked Pease to take the polygraph test. Pease responded that he would not submit to a polygraph without first consulting an attorney. Detective Hunt then produced the arrest warrant that he had obtained the day before and formally placed Pease under arrest.

■ Pease was not informed of the arrest warrant until the end of the interview.[2] He testified that if he had known that the police had already obtained a warrant for his arrest, he would not have signed the *Miranda* waiver and consented to the interview, but would have asked to see an attorney immediately.

The district court ruled from the bench that "it's not acceptable for police to have an arrest warrant, then to seek information, to ask questions without informing that individual that he or she's under arrest." The court relied on language from *Commonwealth v. Jackson*, 377 Mass. 319, 386 N.E.2d 15 (1979), to support its finding of impermissible deception:

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** This was the only disputed fact. Detective Hunt testified that he informed Pease about the existence of the arrest warrant at the very beginning of the interview, before the defendant signed the *Miranda* waiver. The trial court specifically found to the contrary, consistent with the testimony of the defendant that the arrest warrant was not mentioned until the end of interview. We are, of course, bound by this finding of fact which is supported by the record.

We think that where police pursue a course of conduct aimed at improperly convincing a defendant to relinquish the right to remain silent, the Commonwealth has neither "scrupulously honored" that right nor has it sustained its burden of showing a knowing, intelligent and voluntary waiver of that right.

*Id.* 386 N.E.2d at 21. The district court concluded that where the police had an arrest warrant and an obligation to advise pursuant to *Miranda,* the failure to advise the defendant that there was an arrest warrant was not acceptable and improperly convinced the defendant to relinquish his *Miranda* rights.

The district court did not explicitly determine when Pease was placed in custody for *Miranda* purposes. However, the court found that the police were required to give Pease *Miranda* warnings before interviewing him at the station. Consistent with this conclusion, the court stated that ordinarily suspects are handcuffed while in transit to the police station and that the fact that Pease was not handcuffed would have given him the impression that he was not in custody during the ride to the station. The district court's discussion of this ride suggests that the police intentionally wished to create a noncustodial atmosphere in order to encourage the subsequent *Miranda* waiver and interview at the police station.

Upon arriving at the police station Pease was taken through a number of "electrically controlled doors" to a "very secure area," and could not have simply gotten up and walked out of the interview room. These facts strongly suggest a custodial environment and support the court's conclusion. Thus, while the district court did not explicitly hold that Pease was in custody during the interview, we infer from its ruling that *Miranda* warnings were required before the interview that the court applied the correct standard and implicitly found that Pease was in custody once he was taken into the locked interview room. Also, the district court would not have reached the question of whether the failure to inform Pease of the arrest warrant prevented a knowing, intelligent, and voluntary waiver of *Miranda*

rights had the court not implicitly found Pease was in custody.

■ The constitutional requirement to give a criminal suspect *Miranda* warnings applies when the suspect is subject to custodial interrogation. *See People v. LaFrankie,* 858 P.2d 702, 705 (Colo.1993). In addition to a formal arrest, custody includes situations where the person being interrogated reasonably believes that he is deprived of his freedom of action in a significant way. *See id.* A trial court's determination of whether a person is in custody will not be disturbed where its findings of fact are adequately supported by competent evidence and the determination is based on the correct legal standard. *See People v. Haurey,* 859 P.2d 889, 893 (Colo.1993); *see also People v. Trujillo,* 784 P.2d 788, 792 (Colo.1990). Accordingly, we accept the district court's implicit determination that Pease was in custody when he was interviewed at the police station, and we address the court's determination that Pease could not knowingly, intelligently, and voluntarily waive his *Miranda* rights because he was not informed that a warrant had been issued for his arrest.

## II.

■ In order for a waiver of *Miranda* rights to be considered valid, the prosecution must prove by a preponderance of the evidence that the waiver was knowingly, intelligently, and voluntarily made. *See People v. May,* 859 P.2d 879, 882 (Colo.1993). To be valid, a *Miranda* waiver must be:

> "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness, both of the nature of the right being abandoned and the consequences of the decision to abandon it."

*Id.* (quoting *People v. Hopkins,* 774 P.2d 849, 851 (Colo.1989) and *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986)); *see also Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 856–57, 93 L.Ed.2d 954 (1986). The voluntariness prong of this test focuses on whether police

conduct was coercive. The knowing and intelligent prong of this test focuses on the suspect's state of mind. *See May*, 859 P.2d at 883.

██ The district court did not find, and the evidence of record does not suggest, that the *Miranda* waiver was not knowingly and intelligently made with awareness of the nature of the right being abandoned and the consequences of the decision to abandon that right. The district court held that Pease's waiver was involuntary only because of Detective Hunt's failure to inform Pease about the existence of the arrest warrant. Thus, the district court regarded the failure to tell Pease about the arrest warrant as a deception, and Pease's waiver as the product of this deception. The court therefore based its suppression order on the prosecution's failure to satisfy the voluntariness prong of the waiver test. We disagree with the district court's conclusion that the failure of police to inform a suspect that they have obtained a warrant for his arrest is a deception which will render a waiver involuntary.

██ The prohibition on the use of deceptive tactics to obtain a waiver of constitutional rights stems from language in *Miranda* that a suspect may not be "threatened, *tricked*, or cajoled into a waiver" of constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 476, 86 S.Ct. 1602, 1628–29, 16 L.Ed.2d 694 (1965) (emphasis added). The United States Supreme Court has consistently held that police need not inform a suspect of information which is beyond the scope of *Miranda*, even if the information might affect the suspect's decision to talk to police. A decision is not involuntary because it is unwise, or may prove unwise in hindsight. Nothing in the Constitution or *Miranda* requires police to tell a suspect all the facts and circumstances which might affect the suspect's decision whether to waive his rights. Rather, *Miranda* prevents the

police from coercing a suspect and requires them to insure that a suspect is aware of and understands his constitutional rights.

In *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), police properly advised a suspect before questioning, but failed to inform the suspect that his sister had arranged to get him an attorney and that this attorney had called the police station. The Supreme Court held that this failure to inform the suspect about the attorney's telephone call did not render the suspect's *Miranda* waiver involuntary.

> Nothing in any of our waiver decisions or in our understanding of the essential components of a valid waiver requires so incongruous a result. No doubt the additional information would have been useful to respondent; perhaps even it might have affected his decision to confess. But we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights. Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

*Id.* at 422–23, 106 S.Ct. at 1141 (citations omitted).[3]

Similarly, in *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), the Supreme Court held that the failure of federal agents to inform a suspect of the subject matter of an interrogation had no effect on the suspect's voluntary, knowing, and intelligent waiver of his *Miranda* rights. The Court noted that sometimes affirmative misrepresentations by the police could invalidate a waiver, but mere silence by law enforce-

---

**3.** Several states have declined to follow the holding in *Moran* on various state law grounds. *See, e.g., People v. Bender*, 452 Mich. 594, 551 N.W.2d 71 (1996). Our court of appeals has likewise suggested that our state constitutional guarantee of due process might require police in certain circumstances to inform suspects that counsel has been retained or is available. *People v. Page*,

907 P.2d 624, 633 (Colo.App.1995), *cert. denied*, No. 95SC313 (Colo. Dec. 11, 1995). We express no opinion on the narrow question of attorney access raised by the court of appeals, but merely cite *Moran* for the general proposition that a criminal suspect need not be informed of every fact which might impact the wisdom of a decision to waive *Miranda* rights.

ment officials about the subject matter of an interrogation was not trickery which rendered the suspect's waiver involuntary. *Id.* at 576 & n. 8, 107 S.Ct. at 858 & n. 8.

Finally, in *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977), the defendant was given *Miranda* warnings prior to testifying before a grand jury. The defendant's uncompelled testimony was later used against him at his criminal trial. The defendant argued at trial that his waiver of *Miranda* rights was involuntary because he did not know that he was a suspect when he testified before the grand jury. The Supreme Court held that such knowledge had no bearing on the constitutional validity of the defendant's waiver. "Even in the presumed psychologically coercive atmosphere of police custodial interrogation, *Miranda* does not require that any additional warnings be given simply because the suspect is a potential defendant...." *Id.* at 188, 97 S.Ct. at 1819.

Guided by this authority, other courts have consistently held that the failure of police to inform an individual that they have obtained a warrant for his arrest has no effect on the individual's ability to voluntarily waive his *Miranda* rights. *See United States v. McVeigh,* 940 F.Supp. 1541, 1561 (D.Colo. 1996) (*Spring* and *Moran* "also support the conclusion that it was not required that the FBI disclose to the interrogating agents and, in turn, to Mr. Nichols, that a warrant for his arrest had been issued in Oklahoma City"); *State v. Manning,* 506 So.2d 1094, 1095–97 (Fla.Dist.Ct.App.1987) (following *Spring* and *Moran* in holding that a police officer's failure to inform a suspect that police had already obtained an arrest warrant did not constitute coercion or trickery which would invalidate the suspect's *Miranda* waiver); *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336, 1340 (1983) ("The fact that appellant was not explicitly informed that the officers had an arrest warrant at the time she received the [*Miranda* ] warnings does not invalidate their effectiveness. It is not essential that a suspect be informed of the charges against her before being interrogated."); *see also United States v. Washington,* 431 U.S.

181, 186, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977).

Here, the sole reason the district court suppressed Pease's statements was its conclusion that Detective Hunt was "not playing fairly" when he chose not to inform Pease that he had already obtained an arrest warrant before allowing Pease to waive his *Miranda* rights. The district court's reliance on *Commonwealth v. Jackson,* 377 Mass. 319, 386 N.E.2d 15 (1979), to support its finding of impermissible deception, is misplaced. In *Jackson,* the defendant invoked his right to remain silent. The police continued discussing the evidence they had collected and lectured the defendant on how they "knew he did it" after the defendant expressed his intent to exercise his right to remain silent. *Id.* 386 N.E.2d at 19. Police then falsely told the defendant that his girlfriend had implicated herself, a lie which circumstantially implicated the defendant. The Massachusetts Supreme Judicial Court found that these tactics violated both *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (police must scrupulously honor defendant's request to stop questioning), as well as *Miranda*'s prohibition on the use of trickery. *Jackson,* 386 N.E.2d at 20–21.

 The use of affirmative misrepresentations to break down a defendant's will is fundamentally different from the mere failure of police to provide information which concerns only the wisdom and not the voluntariness of a defendant's waiver decision. *See Spring,* 479 U.S. at 576, 107 S.Ct. at 858–59. Detective Hunt's failure to inform Pease that he had obtained an arrest warrant was not deception or trickery prohibited by *Miranda.* The information that a warrant had been issued had no bearing on Pease's ability to make a voluntary, knowing, and intelligent decision to waive his rights. It is immaterial that Pease would not have waived his rights had he known that the warrant existed. The decision to waive was knowingly and intelligently made in that he understood his rights. It is not required that a defendant knows all the circumstances which might affect his decision. The failure to tell Pease of the arrest warrant was not coercion prohibited by *Miranda,* but merely a failure to fully inform

the defendant of all the facts and circumstances which might affect his decision.

Because the failure to inform Pease that an arrest warrant had been issued was the sole basis for suppression, we reverse. We hold that the deliberate failure to tell a defendant that there is a warrant for his arrest does not by itself make a custodial statement involuntary if the statement is made after a proper *Miranda* advisement and a voluntary, knowing, and intelligent waiver of rights.

## III.

Accordingly, the district court's order suppressing defendant's statements is reversed, and this case is remanded for further proceedings consistent with this opinion.