**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Shannon R. GRAY, Defendant–Appellant.**

No. 96CA0556.

Colorado Court of Appeals, Div. V.

Dec. 11, 1997.

Rehearing Denied Jan. 29, 1998.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Matthew S. Holman, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Kaufman Law Firm, P.C., Shaun C. Kaufman, Colorado Springs, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Shannon R. Gray, appeals the judgment of conviction entered upon a jury verdict finding him guilty of child abuse causing serious injury. We remand the cause with directions.

The prosecution's evidence showed that, while his wife slept, defendant shook his infant daughter with such force that she suffered massive brain injuries, causing her to lapse into a persistent vegetative state.

Before trial, defendant moved to suppress statements and writings he had made. At a hearing on that motion, evidence established

that the day following the incident, defendant's wife took the infant to the hospital, explaining that defendant had told her the infant had "head-butted" him. However, a physician told police that this type of contact could not have caused the injuries. The physician opined that shaking was the cause of the infant's injuries.

Defendant agreed to a police interview. The interviewing detective advised defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and defendant signed a written waiver. During the advisement, defendant volunteered that his daughter "head-butted the hell out of me the day before."

At times during the interview, defendant complained of stomach pains and lightheadedness. A second detective, who was also a paramedic, evaluated defendant, and concluded that he could participate in the interrogation process. The detectives offered medical attention, but defendant declined it.

During the interview, defendant initially offered three different stories about how the infant might have been injured: (1) head-butting; (2) defendant rolling over onto the infant in his sleep; and (3) defendant jerking the infant upward in an effort to rescue her from a fall. The detectives informed defendant that these explanations were not consistent with the infant's injuries.

At this point, defendant stood up, told the detectives that he was "tired of you fucking with me," and walked around one detective toward the door. The other detective intercepted defendant by grabbing his arm before he reached the door. Defendant slapped at the detective's arm in an effort to free himself from the grip but the detective grabbed defendant under the chin and forced him against the wall. The intercepting detective then warned defendant not to strike him and told him to calm down. Defendant calmed down and returned to his seat.

Neither detective reiterated the *Miranda* advisement and the interrogation continued. After fifteen to twenty minutes, defendant confessed to shaking the baby. He said that he had shaken the baby for 30 seconds or more with such force that her clothes had fallen off. She then urinated on him and he shook her harder.

The detectives then suggested that defendant write letters to his wife and the judge who would preside in the case to explain what had happened. Defendant complied and wrote two letters in which he again admitted harming the baby.

The trial court denied the motion to suppress and the conviction at issue followed.

## I.

Defendant asserts that the trial court erred in denying his motion to suppress the incriminating statements made to detectives and the letters he wrote at the conclusion of the interrogation for the following reasons: his *Miranda* waiver was involuntary; his oral and written statements were involuntary; and the confessions occurred after he had unequivocally invoked his right to stop the interrogation. We disagree with the first two contentions, but conclude that a remand is required as to the third issue.

When reviewing a trial court's suppression ruling, we must determine whether the trial court's factual findings are adequately supported by competent evidence in the record. If so, we will not disturb them. *People v. Gennings*, 808 P.2d 839 (Colo.1991). We must also determine whether the trial court applied the proper legal standard to the facts of the case. *People v. Jordan*, 891 P.2d 1010 (Colo.1995).

## A.

In determining the validity of a *Miranda* waiver, a court must consider the totality of the circumstances surrounding the custodial interrogation. *People v. Jiminez*, 863 P.2d 981 (Colo.1993).

In order for a waiver of *Miranda* rights to be valid, the prosecution must prove by a preponderance of the evidence that the waiver was knowingly, intelligently, and voluntarily made. A waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. *People v. Pease*, 934 P.2d 1374 (Colo. 1997); *see also Colorado v. Spring*, 479 U.S.

564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). Thus, the test focuses on whether police conduct was coercive. *See People v. May,* 859 P.2d 879 (Colo.1993).

■ The failure of the police to tell a suspect of the existence of an arrest warrant before questioning is not coercion or trickery, nor are police required to tell a suspect all the facts and circumstances that might affect the suspect's decision whether to waive his or her rights. Rather, *Miranda* prevents the police from coercing a suspect and requires them to ensure that a suspect is aware of and understands his or her constitutional rights. *People v. Pease, supra.*

■ The *Pease* holding is dispositive of defendant's assertion that his waiver was involuntary because the detectives did not reveal to him the strength of their evidence when the interrogation commenced.

■ We also reject defendant's contention that, because he was ill during the interview, his *Miranda* waiver was involuntary.

The trial court concluded that, although defendant exhibited signs of discomfort including upset stomach, tingling fingers, and lightheadedness, he was not debilitated. He was able to participate in an interview that lasted several hours and refused medical assistance when it was offered. He was also evaluated by a detective who was a certified paramedic.

The trial court employed the correct legal standard and its findings are adequately supported by competent evidence. Accordingly, we will not disturb its ruling. *See People v. Gennings, supra.*

### B.

Defendant also contends that his oral and written confessions to shaking the infant were involuntary. We disagree.

· ■ A suspect's confession is admissible in evidence only if it is voluntary. *People v. Raffaelli,* 647 P.2d 230 (Colo.1982). A suspect's statement must be the product of his or her free and unconstrained choice, *see People v. Mounts,* 784 P.2d 792 (Colo.1990), and it must not be the result of official

coercion, intimidation, or deception. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). *See People v. May, supra.*

■ Official coercion includes any sort of threats, or any direct or implied promises or improper influences, however slight. *People v. Mendoza–Rodriguez,* 790 P.2d 810 (Colo. 1990); *People v. Lytle,* 704 P.2d 331 (Colo. App.1985).

■ A statement by a police officer instructing a suspect not to lie may constitute a threat. *See People v. Thomas,* 839 P.2d 1174 (Colo.1992). And, coercive police conduct may include even subtle forms of psychological coercion. *See People v. Gennings, supra.*

The determination whether governmental conduct is actually coercive and induces a challenged statement can only be made by assessing the totality of the circumstances under which the statement is made, including factors such as:

> Whether the defendant was in custody or free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel; whether the challenged statement was made during the course of interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with the law enforcement and criminal justice system.

*People v. Gennings, supra,* 808 P.2d at 844; *see also People v. Dracon,* 884 P.2d 712 (Colo.1994).

Defendant first argues that, when the detectives told him it "could help" to explain in letter form to the judge and to his wife what had happened, this was a promise of leniency

which rendered his statements involuntary. The trial court found that the suggestion to write the letters occurred after the oral confession and, therefore, had no effect on that statement. The court also found that the record did not support a finding that defendant was actually promised leniency in return for writing the letters.

The trial court's findings of fact are supported by competent evidence in the record and it employed the proper legal standard. Accordingly, we reject defendant's contention. *See People v. Gennings, supra.*

■ Next, defendant argues that the physical confrontation between himself and the detective, coupled with the admonition that he could be charged with assaulting an officer if he did not calm down, rendered his subsequent confessions involuntary.

The trial court stated that it was an intimidating experience for defendant to be interrogated by two police officers who suspected him of committing a crime, but it also noted that an arrest at gunpoint after a struggle on the street could be just as intimidating—and would not necessarily render a subsequent confession involuntary.

Furthermore, the court found that the confrontation between defendant and the detective was not coercive conduct that deprived defendant of the free will to refrain from confessing. The court found that:

> [T]he contact between the two was brief and resulted from the initial conduct of the Defendant that the detective reacted to. The force used by the detective was the minimum necessary to restrain the Defendant and restore order. The police had, at that time, probable cause to arrest the Defendant, so his liberty was not unlawfully [infringed]. The Defendant was not injured in the confrontation. The detective did not scream or abuse him verbally. The Defendant went back to his seat and continued to talk to the detectives for some 15 to 20 minutes. There is nothing in the Defendant's contemporaneous letters he wrote that indicates the slightest hint that the confrontation somehow forced him to confess.

Again, the trial court's findings are supported by the record, and it employed the correct legal standard. Therefore, we will not disturb its ruling. *See People v. Gennings, supra.*

■ Defendant also contends that the detectives used coercive interviewing techniques by developing an atmosphere of disclosure that made it easy for him to talk about his painful life experiences and that, therefore, his confessions were involuntary.

The trial court found that the police used special interrogation techniques designed to induce a confession from defendant. These techniques included withholding information from defendant so that the detective could "trap him" with it; confronting him with inconsistencies in his stories; and using the detective's knowledge of shaken-baby syndrome to point out the weaknesses of defendant's different explanations of the infant's injuries.

The court found that these techniques did not rise to the level of coercion and did not deprive defendant of his free will. As before, the court's findings have support in the record and it employed the correct legal standard. We therefore reject defendant's contention. *See People v. Gennings, supra.*

■ Defendant also argues that his physical discomfort during the interview rendered his confessions involuntary. However, the trial court's findings mentioned above that refer to defendant's physical condition apply equally to the analysis of the voluntariness of defendant's confession. Therefore, we decline to disturb the trial court's findings and conclusions.

### C.

Defendant asserts that he invoked his right to cease the interrogation when he told detectives that he was "tired of them fucking with him" and attempted to leave the room before making his confession. We conclude that a remand is necessary as to this issue.

■ A defendant has the right to cut off questioning and reassert Fifth Amendment rights at any time. Once invoked, the right to cut off questioning must be scrupu-

**1130**

lously honored. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *People v. Roark,* 643 P.2d 756 (Colo.1982).

However, *Miranda* does not require the police to accept as conclusive any statement, no matter how ambiguous, as a sign that the suspect desires to cut off questioning. *People v. Roark, supra.* Rather, a defendant's invocation of the right to remain silent must be clear and unequivocal. *See Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (the right to counsel must be invoked unambiguously; the articulation must be sufficiently clear that a reasonable police officer would understand the statement to be a request for an attorney); *Evans v. Demosthenes,* 902 F.Supp. 1253 (D.Nev.1995) (*Davis'* "clear articulation" rule applies to the right to remain silent); *see also People v. Cooper,* 731 P.2d 781 (Colo.App.1986) (silence alone is not enough to invoke the right to cease an interrogation).

In *Coleman v. Singletary,* 30 F.3d 1420 (11th Cir.1994), the court held that the same rule should apply to a suspect's ambiguous or equivocal references to the right to cut off questioning as to the right to counsel and, faced with an ambiguous or equivocal statement, the police have no duty to clarify the suspect's intent, but rather may proceed with the interrogation. Other courts have followed this rationale. *See United States v. Sanchez,* 866 F.Supp. 1542 (D.Kan.1994); *United States v. Lincoln,* 42 M.J. 315 (C.M.A.1995) (same); *State v. Bacon,* 163 Vt. 279, 658 A.2d 54 (1995) (same).

We agree with this approach. Accordingly, we hold that the trial court must determine, under the totality of the circumstances, whether a reasonable police officer would understand the statement and conduct at issue to be an unequivocal and unambiguous assertion of the right to terminate questioning.

Inasmuch as we are here adopting the rationale of *Davis* and applying it to the Fifth Amendment right to terminate questioning, we conclude that remand is necessary to permit the trial court to employ that standard in determining whether defendant's words and conduct were sufficient to invoke the right. And, contrary to the prosecution's contention, we do not conclude that the trial court already had employed this standard in reaching its conclusions.

## II.

Defendant asserts that the trial court improperly denied admission of evidence offered in an attempt to implicate his wife as the person who had committed the abuse. We disagree.

At trial, defendant sought to introduce testimony from a witness regarding "cuts and marks" that had been observed on the face of his wife's child from a previous marriage. Defendant also sought to introduce the witness' statement that the child had told her that the wife had slapped her in the face on one occasion.

Defendant offered this testimony as "reverse similar transaction" evidence and cited *People v. Bueno,* 626 P.2d 1167 (Colo.App. 1981) to the trial court in support of its admissibility. Defendant asserted that he intended to introduce this evidence for the purpose of exposing the "abusive and nonmothering capacities" of the wife. Defendant argued that the alleged abuse to the wife's first child was similar enough to the infant's abuse to create a doubt as to defendant's guilt. The court excluded the evidence.

On appeal, defendant asserts a new theory and reason for admissibility, arguing that the evidence was tendered to show that the wife had a motive or opportunity to inflict the abuse upon her infant daughter. Defendant relies here upon *People v. Schwartz,* 678 P.2d 1000 (Colo.1984). Because this theory and rationale were not presented to the trial court, we review defendant's contention under a plain error analysis. *See People v. Olson,* 921 P.2d 51 (Colo. App.1996). Plain error exists only when an appellate court can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See* Crim. P. 52(b).

Here, in view of defendant's confession, the asserted error does not rise to the level of plain error. *See Wilson v. People*, 743 P.2d 415 (Colo.1987).

The cause is remanded with directions that the trial court determine whether the defendant unequivocally terminated his interrogation under the legal principles adopted in this decision. In the event the trial court concludes that defendant did not do so, the conviction shall stand affirmed, subject to appeal of the court's determination. In the event the trial court concludes that defendant did unequivocally invoke his right to terminate questioning, the judgment shall stand reversed, subject to the prosecution's right to seek review of that ruling. In such event, the trial court shall suppress defendant's written and oral statements rendered thereafter, and shall grant a new trial.

Judge RULAND and Judge KAPELKE concur.