The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**Tremaine D. SPEER, Defendant–Appellant.**

No. 05CA0206.

Colorado Court of Appeals, Div. II.

Oct. 18, 2007.

As Modified on Denial of Rehearing March 27, 2008.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Todd E. Mair, Deputy State Public Defender, Elisabeth Hunt White, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Tremaine D. Speer, appeals the judgment of conviction entered upon jury verdicts finding him guilty of attempted aggravated robbery and a crime of violence. We reverse and remand for a new trial.

Defendant was originally charged with attempt to commit first degree murder, first degree assault, theft by receiving, crime of violence, and possession of a weapon by a previous offender. The last count was severed from the other counts before trial and later dismissed. Before trial, he pled guilty to the theft by receiving count.

According to the prosecution's evidence, on April 6, 2004, defendant approached the victim at a convenience store, pointed a gun at him, and demanded money. When the victim resisted, defendant fired several shots, one of which hit the victim in the stomach.

Defendant testified at trial and admitted robbing and shooting the victim, but he claimed he acted under duress. He maintained that an acquaintance (the accomplice) had planned the robbery and had forced defendant to participate by threatening to harm him and defendant's brother if defendant did not participate. Defendant explained that the accomplice had arranged to buy the victim's car on the night of April 6 for $600 in cash; that the accomplice told defendant he would drive the victim and the victim's wife and child home, but would stop at a particular convenience store along the way; that the accomplice would go into the store; and that while he was in the store, defendant was to rob the victim of the $600

and return the money to the accomplice. Defendant also testified that the accomplice came to defendant's apartment around noon on the day of the offense, stayed with defendant all day, drove him to see the victim's car, and gave defendant a gun to carry out the plan. Defendant claimed that the gun had gone off accidentally when the victim resisted, and that defendant fired the other shots to scare the victim.

At the close of the evidence, defendant requested that the trial court instruct the jury on the affirmative defense of duress. The court denied his request, concluding that (1) the accomplice's action in allegedly giving defendant a gun eliminated the possibility of harm to defendant in the immediate future; (2) because the accomplice had not taken any physical action against defendant, but had only threatened him, defendant's fear was not well grounded; (3) because defendant had an ample opportunity to escape, to warn the victim, to walk away, and to unload the weapon, there was also no possibility of death or injury; and (4) therefore, the threshold required for the defense of duress had not been shown.

Defendant was convicted of attempted aggravated robbery and crime of violence and acquitted of the remaining charges.

## I. Suppression Motion

Defendant first contends the trial court erred in denying his motion to suppress his statements to the police because his waiver under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was invalid, and because his statements were involuntary and were made after he invoked his right to stop the interrogation. We disagree.

A trial court's ruling on a motion to suppress presents a mixed question of fact and law. *People v. Medina*, 25 P.3d 1216, 1223 (Colo.2001); *People v. Arroya*, 988 P.2d 1124, 1138 (Colo.1999); *People v. Blessett*, 155 P.3d 388, 393 (Colo.App.2006). An appellate court must defer to the trial court's findings of fact if they are supported by competent evidence in the record, but will review its conclusions of law de novo. *Arroya*, 988 P.2d at 1129.

## A. Validity of *Miranda* Waiver

A defendant may waive the right to remain silent and the right to counsel, but such a waiver must be knowing, intelligent, and voluntary. *Miranda.* The validity of a waiver is evaluated under the totality of the circumstances. *People v. Platt,* 81 P.3d 1060, 1063 (Colo.2004); *People v. Al–Yousif,* 49 P.3d 1165, 1168 (Colo.2002); *Blessett,* 155 P.3d at 395.

For a waiver to be valid, the prosecution must prove by a preponderance of the evidence the waiver was knowingly, intelligently, and voluntarily made. A waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. *People v. Pease,* 934 P.2d 1374, 1377 (Colo.1997).

At the motions hearing in this case, the arresting officer testified that he advised defendant of his *Miranda* rights by reading from a card issued by the police department, that he went over the advisement form with defendant, and that defendant said he understood those rights and agreed to talk to the officers.

A second officer testified and denied that the officers made any threats or promises to induce defendant to sign the advisement form. That officer stated that he had witnessed defendant being asked whether the initials and the signature on the form were his, and that defendant said he understood his rights and was willing to talk.

The trial court found the prosecution had established by clear and convincing evidence that a proper *Miranda* warning was given, that defendant had voluntarily waived his rights before making a statement, and that he was readvised before he agreed to make a statement. The court applied the correct legal standard, and its findings are adequately supported by competent evidence. Accordingly, we will not disturb its ruling.

## B. Voluntariness of the Statements

Defendant also contends his statements were involuntary because they were obtained by psychological coercion. He largely relies on two undisputed facts: (1) during his interrogation at the police station, the officers told him that a video from the convenience store showed he was there and that a witness had already identified him as the perpetrator, and both of these statements were false; and (2) during the interrogation, he began shaking and crying. Defendant maintains that the police officers violated his right to due process because they extracted his statements using lies, threats, and pressure. We disagree.

A defendant's confession must be voluntary to be admissible. *Blessett,* 155 P.3d at 393; *see Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *People v. Fordyce,* 200 Colo. 153, 156, 612 P.2d 1131, 1133 (1980). The burden is on the prosecution to prove by a preponderance of the evidence the confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *People v. McIntyre,* 789 P.2d 1108, 1110 (Colo.1990); *see People v. May,* 859 P.2d 879, 887 (Colo.1993); *People v. Gray,* 975 P.2d 1124, 1128 (Colo. App.1997).

The determination whether a confession is voluntary is based on the totality of the circumstances. *People v. Mendoza–Rodriguez,* 790 P.2d 810, 816 (Colo.1990); *Blessett,* 155 P.3d at 394. As a division of the court stated in *People v. Zamora,* 940 P.2d 939, 942 (Colo.App.1996):

> Although deception by the police is not condoned by the courts, the limited use of ruses is supported by the overwhelming weight of authority. Most courts have recognized that ruses are a sometimes necessary element of police work and have held that deception standing alone does not invalidate consent; it is one factor to be considered in assessing the totality of the circumstances.

Here, the trial court found that defendant's statements were voluntary, and the transcript of defendant's interrogation supports the trial court's findings. It shows that the officers stopped questioning defendant while he cried, and continued when he regained his composure. The transcript also reflects that defendant started crying when the officer asked him whether the incident

had been an accident and whether the accomplice had been involved. *See People v. Stephenson,* 56 P.3d 1112, 1120–21 (Colo.App. 2001) (giving the defendant an "opportunity" to confess was not an implied promise of leniency). Furthermore, throughout the interrogation, defendant continued to deny any involvement in the incident and to deny knowing the accomplice.

Thus, the evidence does not support defendant's contention that his will was overborne by mentally or physically coercive conduct. *People v. Blankenship,* 30 P.3d 698, 703 (Colo.App.2000); *see People v. Valdez,* 969 P.2d 208, 211 (Colo.1998) ("Critical to any finding of involuntariness is the existence of coercive governmental conduct, either physical or mental, that plays a significant role in *inducing* a confession or an inculpatory statement." (emphasis added) ).

Defendant's reliance on *People v. Freeman,* 668 P.2d 1371 (Colo.1983), is misplaced. There, the officers made repeated misrepresentations to the defendant regarding his potential punishment and the strength of the evidence against him, and they alternately berated, reassured, and complimented him. The supreme court concluded that, while none of the factors considered separately would render the confession involuntary, their combined effect, together with the coercive atmosphere, made the defendant's confession involuntary. *Id.* at 1380; *see also People v. Klausner,* 74 P.3d 421, 425 (Colo. App.2003).

It is true the officers here made false statements regarding the evidence, but the record supports the trial court's finding that the effect of the statements did not make defendant's statements involuntary. The officers urged him that telling the truth was in his best interest, and during the interrogation, none of the officers was in uniform, and none displayed any weapons although they were armed. As the trial court explained, "Any governmental action in this context means more than just misstatements or refusing to stop an interrogation when a [d]efendant is upset or crying." Accordingly, we uphold the trial court's determinations.

## C. Right to Remain Silent

Defendant next contends his motion to suppress should have been granted because the detectives continued to interrogate him after he said he wanted to remain silent. However, even if we assume defendant properly preserved this issue for appeal by raising it in the trial court, we conclude there was no error because the statements he made after allegedly asserting his right to remain silent were used solely for impeachment and were not used in the prosecution's case-in-chief. *See Oregon v. Elstad,* 470 U.S. 298, 306–07, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

## II. Instruction on Affirmative Defense

Defendant next contends the trial court erred in failing to instruct the jury on his affirmative defense of duress. We agree.

Generally, a defendant is entitled to an instruction embracing his theory of the case when there is any evidence to support the theory, even if the only supporting evidence is highly improbable testimony. *People v. Washington,* 179 P.3d 153, 169 (Colo. App. 2007); *see People v. Nunez,* 841 P.2d 261, 264–65 (Colo.1992). When considering whether a defendant is entitled to requested instructions, we consider the evidence in the light most favorable to the defendant. *Cassels v. People,* 92 P.3d 951, 955 (Colo.2004); *Mata–Medina v. People,* 71 P.3d 973, 979 (Colo.2003).

Section 18–1–708, C.R.S.2007, defines the defense of duress, and states, in pertinent part:

A person may not be convicted of an offense, other than a class 1 felony, based upon conduct in which he engaged at the direction of another person because of the use or threatened use of unlawful force upon him ... which force or threatened use thereof a reasonable person in his situation would have been unable to resist.

To be entitled to an instruction on duress, a defendant must make a threshold showing of (1) an immediate threat of death or bodily injury; (2) a well-grounded fear the threat will be carried out; and (3) no reasonable opportunity to escape the threat-

ened harm. *See Bailey v. People,* 630 P.2d 1062, 1068 (Colo.1981); *People v. Preciado–Flores,* 66 P.3d 155, 163 (Colo.App.2002). Any threat must be more than mere speculation or a veiled threat of unspecified future harm. *Preciado–Flores,* 66 P.3d at 163; *People v. Trujillo,* 41 Colo.App. 223, 225, 586 P.2d 235, 237 (1978).

■ Here, defendant testified that he had only participated in the accomplice's plan to rob the victim because the accomplice had threatened to hurt him and his younger brother if he did not do so. Defendant said he was afraid of the accomplice and afraid for his brother because the accomplice had previously pointed a gun at him, had threatened to kill him, and he had personal knowledge the accomplice had injured and assaulted people in the past.

The People maintain that defendant did not meet the third requirement of duress because he testified that he and the accomplice were in public several times during the afternoon of the offense. According to the People, defendant had an ample opportunity to escape the threatened harm by attempting to get help, to walk away, or to hide from the accomplice. However, contrary to the People's contention, the harm threatened by the accomplice was to defendant and his younger brother, which arguably could not have been prevented by defendant's acts of asking for help, walking away, or hiding from the accomplice. We therefore conclude defendant presented sufficient evidence that he had no reasonable opportunity to escape the threatened harm.

There was also evidence from the victim and his wife that corroborated defendant's account of the accomplice's involvement in the offense. The victim testified that after the sale of the car, the accomplice insisted on driving it and dropping the victim and his family off at their house; that the accomplice made an unplanned stop at the convenience store, despite the victim's objection that they needed to get home; and that the accomplice had parked on the windowless side of the store before he got out of the car. The victim also reportedly told the police the accomplice had set him (the victim) up.

■ The trial court was unpersuaded by the duress defense. However, whether a threat is imminent is, in all but the clearest of cases, to be decided by the trier of fact after considering all the surrounding circumstances, including the defendant's opportunity and ability to avoid the harm. *See People v. Maes,* 41 Colo.App. 75, 77, 583 P.2d 942, 944 (1978).

In *Maes,* the defendant testified that three unidentified inmates had asked him "to hold their [heroin] ... until payday." He said he took it and did not report the incident because the men told him that, if he did not take it, they would "hit" him, and if he reported them, they would "have somebody from the outside do something to (his) wife and son." *Id.* at 76, 583 P.2d at 943. The division held in *Maes* that unlike a generalized fear of retaliation, the defendant testified that he was specifically threatened with injury to him and to his family if he refused to hold the heroin or if he reported the incident to the authorities. The *Maes* division concluded the defendant's failure to identify the inmates who threatened him went to the credibility of the explanation, not to whether the defense should be submitted to the jury. *Id.* at 77, 583 P.2d at 944.

■ Similarly, here, we conclude the evidence presented by defendant permitted an inference that a real threat existed and not merely a "veiled threat of unspecified future harm." Thus, defendant was entitled to have his defense considered by the jury. Defendant's acquittal of the attempted murder and first degree assault charges suggests that the jury found his testimony credible in part. Had the jury been instructed that his theory of duress, if believed, was a defense, the other verdicts might also have been different. *See People v. Hill,* 182 Colo. 253, 258, 512 P.2d 257, 259 (1973).

We therefore conclude the error was not harmless, and that the judgment must be reversed and the case remanded for a new trial.

## III. Juror Challenge for Cause

■ Defendant also raises an issue that is likely to recur at the new trial, or in

numerous other criminal cases, and therefore we address it here. He contends the trial court erred as a matter of law in denying his challenge for cause to two prospective jurors who worked for the Transportation Security Administration (TSA) at Denver International Airport. We disagree.

In 2001, Congress enacted the Aviation and Transportation Security Act, Pub.L. No. 107–71, 115 Stat. 597 (2001), creating a federal workforce to screen passengers and cargo at the nation's commercial airports. *Am. Fed'n of Gov't Employees v. Loy*, 367 F.3d 932, 934 (D.C.Cir.2004). Pursuant to the authority contained in that Act, TSA assumed responsibility for security screening in the nation's commercial airports. *See Francis v. Mineta*, 505 F.3d 266 (3rd Cir.2007).

Pursuant to the Department of Homeland Security Reorganization Plan (Nov. 25, 2002), as required by section 1502 of the Department of Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135 (2002), TSA was transferred from the Department of Transportation to the Department of Homeland Security, effective March 1, 2003. *See Francis v. Mineta*, 505 F.3d at 268 n. 2. Thus, TSA is currently a component of the United States Department of Homeland Security (DHS).

At the beginning of voir dire in this case, the trial court asked whether any of the prospective jurors were compensated employees of a public law enforcement agency. Two jurors reported that they worked for airport security. The trial court asked the first juror whether he had the ability to make an arrest, and he said he did not. The court also asked whether the "agency itself [had] the ability to, or as an agent of that agency, any of the agents have the ability to make arrests." The first juror replied: "Not to my knowledge, no ... we use the Denver Police Department in the case where I'm involved." The second juror stated that she worked as an airport screener, and that she also had to ask for police involvement if there were any problems with the passengers.

Defense counsel moved to dismiss both jurors for cause, contending they were employed by DHS, which is a public law enforcement agency. The court denied defendant's motions, reasoning that the jurors did not have the authority to make arrests and relied upon local police for that authority.

We generally review a trial court's ruling on a challenge for cause for an abuse of discretion. *Carrillo v. People*, 974 P.2d 478, 485 (Colo.1999). But where, as here, the facts are undisputed, and the issue involves a question of law, our review is de novo. *Antolovich v. Brown Group Retail, Inc.*, 183 P.3d 582, 592 (Colo.App. 2007).

The General Assembly has set forth the circumstances in which juror bias is implied by law. *See* § 16–10–103(1)(a)–(i), (k), C.R.S. 2007; *see also* Crim. P. 24(b)(1)(I)-(IX), (XII); *People v. Rhodus*, 870 P.2d 470, 473 (Colo.1994).

As relevant here, section 16–10–103(1)(k) requires a court to dismiss a prospective juror who is a "compensated employee of a public law enforcement agency." *See also* Crim. P. 24(b)(1)(XII) ("The court shall sustain a challenge for cause on one or more of the following grounds: ... [t]he juror is an employee of a public law enforcement agency...."). This section applies to "any employee under the control of a law enforcement agency, irrespective of his or her job duties, so long as he or she was under the control of such agency." *People v. Coleman*, 844 P.2d 1215, 1218 (Colo.App. 1992).

The Colorado Supreme Court has construed the term "law enforcement agency" to mean a police-like division or subdivision of government that has the authority to investigate crimes and to arrest, to prosecute, or to detain suspected criminals. *Ma v. People*, 121 P.3d 205, 207 (Colo.2005); *People v. Scott*, 41 Colo.App. 66, 68, 583 P.2d 939, 941 (1978) (holding the Department of Corrections is a law enforcement agency because some of the agency's personnel have the power to arrest). The concern is that one who is employed by a law enforcement agency will favor, or will be perceived to favor, the prosecution's side of a criminal case. *Ma*, 121 P.3d at 210; *People in Interest of R.A.D.*, 196 Colo. 430, 432, 586 P.2d 46, 47 (1978).

The actual function of an employee of a law enforcement agency is irrelevant. The statute extends, for example, to physicians employed at a prison clinic, *see People v. Manners*, 708 P.2d 1391, 1392 (Colo.App.1985); bakers and counselors employed by the state prison, *see Scott*, 41 Colo.App. at 68, 583 P.2d at 942; and mechanics working in a police department's garage, *see People v. Maes*, 43 Colo.App. 365, 367, 609 P.2d 1105, 1107 (1979). The reasoning behind these decisions is that these employees are in daily contact with law enforcement personnel, and the employees' livelihoods depend on law enforcement agencies.

▮ Nevertheless, simply because a state or federal agency holds investigative powers or has contact with law enforcement personnel does not render it a "public law enforcement agency" within the meaning of the statute. *People v. Urrutia*, 893 P.2d 1338, 1345–46 (Colo.App.1994). For example, in *People v. Simon*, 100 P.3d 487, 491 (Colo.App.2004), a division of this court acknowledged that the Environmental Protection Agency maintains offices for both criminal investigations and civil enforcement, but concluded the EPA was an investigating and rulemaking body and not a law enforcement agency for purposes of section 16–10–103(1)(k). The division reasoned:

> [E]ven in light of the EPA's statutory authority to arrest or prosecute offenders, we nonetheless conclude the EPA is distinguishable from other entities deemed to be public law enforcement agencies under the statute. The conclusion urged by defendant would require trial courts to exclude compensated employees of numerous other public agencies charged primarily with regulation of civil matters, but which also have incidental penal enforcement authority. This conclusion would significantly enlarge the scope of persons unavailable for jury service in a manner that, in our view, was not contemplated by the General Assembly.

*Simon*, 100 P.3d at 491; *see People v. Zurenko*, 833 P.2d 794, 796 (Colo.App.1991) (reaching same conclusion as to Department of Social Services and Equal Employment Opportunity Commission); *People v. Topping*, 764 P.2d 369, 370 (Colo.App.1988) (reaching same conclusion as to State Department of Administration), *aff'd on other grounds*, 793 P.2d 1168 (Colo.1990); *Urrutia*, 893 P.2d at 1345–46 (reaching same conclusion as to Department of Defense).

Because our record here is limited, our holding is narrow in scope. We conclude, based on the statements of these jurors and the finding of the trial court that they lacked the authority to arrest, to prosecute, or to detain suspected criminals, that *TSA employees* are not "compensated employee[s] of a public law enforcement agency" for the purposes of section 16–10–103(1)(k) and therefore need not be excused for cause. *See Ma*, 121 P.3d at 207. We do not decide whether the same conclusion would be required as to other employees under the umbrella of DHS.

## IV.  Mittimus

Defendant contends the mittimus incorrectly states that he pled guilty to attempted aggravated robbery and statutory crime of violence. The People concede this point and agree defendant pled guilty only to the charge of theft. Hence, the mittimus should be corrected on remand.

The judgment is reversed, and the case is remanded for a new trial on the charges of attempted aggravated robbery and statutory crime of violence in accordance with the views expressed in this opinion and for correction of the mittimus.

Judge FURMAN and Judge J. JONES concur.