No. 28515

**The People of the State of Colorado v. Roger Lester Handy**

(603 P.2d 941)

Decided December 3, 1979.                    Rehearing denied December 24, 1979.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Edward G. Donovan, Solicitor General, Kathleen M. Bowers, Assistant Attorney General, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Michael Heher, Deputy, for defendant-appellant.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

Roger Lester Handy has appealed his conviction for escape from confinement at the Colorado State Penitentiary. Section 18-8-208(2), C.R.S. 1973 (now in 1978 Repl. Vol. 8). He has asserted a number of grounds for reversal, none of which are persuasive. For reasons set forth in this opinion, we affirm.

Handy was confined at the medium security unit of the Colorado State Penitentiary. Because Handy was within two years of his parole

eligibility, had an above average disciplinary and work record, and complied with other requirements, he was granted a furlough from 8:00 a.m. on July 31, 1976 to 6:00 p.m. on August 1, 1976. By the terms of the furlough, he was permitted to visit his parents in Colorado Springs, but was restricted to the area encompassed by a ten-mile radius measured from his parents' home.

When it became known at the prison that Handy might receive a furlough, he was contacted by two inmates who were serving life terms for murder. The inmates, J. J. Jackson and Douglas Gas, outlined a plan of escape which called for Handy to appear at the medium security unit with a car on the night of July 31, 1976, with certain firearms so that he could assist them in effectuating an escape. Handy agreed to assist Jackson and Gas. Pursuant to the escape plan, Jackson provided Handy with $75 and Gas arranged for $200 to be delivered to Handy while he was on furlough. Jackson and Gas also provided directions for Handy to obtain two pistols. On the afternoon of July 31, 1976, Handy decided not to go through with the escape plan. He elected to use the money obtained from Jackson and Gas to purchase a bus ticket to Houston, Texas to perfect his own escape. Handy was subsequently charged with escape and his arrest was ordered.

After spending a few days in Houston, Handy hopped a freight train to Louisiana where he was stopped and questioned. After using his Colorado driver's license for identification, the police determined that Handy was the person who had escaped from the Colorado State Penitentiary and arrested him.

While he was being returned to Colorado, Handy told his custodian that he had been confronted with a dilemma when he breached the terms of his furlough and escaped. He said he feared both Jackson and Gas, and could not refuse to participate in their escape plan. He claimed that if he had returned to the penitentiary after failing to carry out his part of the escape plan, Jackson and Gas would have seen to it that he got an "early parole out of the west gate in a pine box." On the other hand, Handy claimed that he could not tell his story to the authorities because the authorities were not capable of protecting him. He feared that his fellow inmates would put a "snitch jacket" on him if he divulged the plan and that he would be killed in the penitentiary. Because of this asserted dilemma, Handy felt that his only alternative was to violate his furlough agreement and escape.

■ At his trial on the escape charge, Handy requested that the jury be instructed on the affirmative defenses of choice of evils, section 18-1-702, C.R.S. 1973 (now in 1978 Repl. Vol. 8) and duress, section 18-1-708, C.R.S. 1973 (now in 1978 Repl. Vol. 8). The trial judge refused the request, stating that the underlying defenses were not available to the defendant under the circumstances of this case. We agree.

■ In cases where an individual is compelled to act in violation of the law, whether by force or emergency, the Criminal Code recognizes two affirmative defenses that may provide justification for the illegal act. Under section 18-1-702, C.R.S. 1973, the defendant may claim that he was faced with a choice of evils and was forced to take emergency measures "to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no conduct of the actor, and which is of sufficient gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

Alternatively, when a defendant has been subjected to force or threats of force section 18-1-708, C.R.S. 1973 provides:

"A person may not be convicted of an offense . . . based on the conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been unable to resist."

In certain cases, both statutes may be relied upon as affirmative defenses to a charge of escape.[1] *See People v. Trujillo,* 41 Colo. App. 223, 586 P.2d 235 (1978); *People v. Robertson,* 36 Colo. App. 367, 543 P.2d 533 (1975).

■ In *People v. Robertson, supra,* the court of appeals outlined a number of conditions which must be met when the choice of evils defense is invoked:

"For this defense to be available here it must be shown that defendant's conduct was necessitated by a specific and imminent threat of injury to his person under circumstances which left him no reasonable and viable alternative other than the violation of the law for which he stands charged."

*See, People v. Lovercamp,* 43 Cal. App.3d 823, 118 Cal. Rptr. 110, 69 A.L.R.3d 668 (1975). The threats must be shown to be definite, specific, and imminent; mere speculation is not enough. *Cf. People v. Trujuillo, supra.*

■ Where the charge is escape, these conditions have been supplemented with an additional requirement that is dispositive of this case. The escapee must immediately report the duress, or choice of evils, which he faced to the proper authorities when a position of safety is reached. *United States v. Michelson,* 559 F.2d 567 (9th Cir. 1977); *People v. Lovercamp, supra. See also United States v. Boomer,* 571 F.2d 543 (10th Cir. 1978). As the court stated in *Michelson:*

---

[1] In a case such as this, the facts that must be established to show a choice of evils defense are subtantially similar to those which are required to show duress.

"Although duress may excuse the inmate's departure, it does not absolve his continued absence from custody. In other words, while coercion may shield the escapee from the imposition of additional punishment, it does not commute the sentence previously imposed."

Thus, where this further requirement is not satisfied, the asserted defense to escape may be properly refused by the trial judge because it is insufficient as a matter of law.

In this case, Handy did not report or disclose his dilemma to the authorities when he reached a place of safety. Although he may have legitimately feared retaliation from Jackson and Gas, it was Handy's duty to report his predicament to the authorities and to work within the legal system to solve his dilemma. To hold otherwise would sanction escape attempts in any situation where an inmate finds himself subject to conflicting demands from other inmates and the authorities.

In our view, the jury was properly instructed and the defendant's conviction is not vulnerable to attack for the reasons asserted. The contentions raised by Handy, other than those set forth in this opinion, do not require discussion.

Accordingly, we affirm.