23CA1348 Peo v Griego 10-30-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 23CA1348
Arapahoe County District Court No. 21CR244
Honorable Joseph Whitfield, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Antoin Josephmalik Griego,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE KUHN
Román, C.J., and Lipinsky, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

_____

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Lynn C. Hartfield, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1      Defendant, Antoin Josephmalik Griego, appeals his conviction for one count each of prohibited use of a weapon, attempted first degree assault, and illegal discharge of a firearm, two counts of unlawful distribution of a controlled substance, and a crime of violence sentence enhancer. We affirm.

## I.     Background

¶ 2      Late one night, the victim, who was part of a neighborhood patrol, drove through a residential area. As she did so, someone fired a gun from an SUV parked nearby, shattering the victim's back windshield. The victim immediately called 911, and police officers located the SUV. Griego was in the driver's seat and had a passenger with him. The officers detained the two, and a search uncovered a handgun, a box of ammunition, marijuana, oxycodone, cocaine, methamphetamine, and approximately $5,000 in cash. Griego was arrested.

¶ 3      The case proceeded to trial. The jury found Griego guilty of two counts of unlawful distribution, manufacturing, dispensing, or sale of a controlled substance (counts 2 and 3); possessing a firearm during the commission of those counts (count 1); attempted first degree assault — extreme indifference (count 12); a crime of

1

violence sentence enhancer for using a firearm during the assault (count 13); and illegal discharge of a firearm (count 14). *See* § 18-18-405(1)(a), (2)(c)(I), C.R.S. 2025; §§ 18-18-407(1)(d)(II), 18-3-202(1)(c), 18-2-101(1), 18-1.3-406(2)(a)(I), 18-12-107.5, C.R.S. 2025. The court sentenced him to thirty-two years imprisonment.

## II. Analysis

¶ 4 Griego raises two contentions on appeal. He asserts that (1) the trial court erred by denying the defense's challenge for cause against a juror and (2) the trial court provided the jury with an incorrect reasonable doubt jury instruction. We address each contention in turn.

### A. For-Cause Challenge to Juror J.T.

¶ 5 Griego contends that the trial court erred by denying defense counsel's challenge for cause to juror J.T. Griego argues that he had a statutory right to strike J.T. for cause because J.T. was a compensated employee of a "public law enforcement agency." *See* § 16-10-103(1)(k), C.R.S. 2025. We are not persuaded.

#### 1. Additional Background

¶ 6 During voir dire, the trial court asked if any of the prospective jurors worked for a public law enforcement agency. J.T. said he

2

worked for "the City and County of Denver as a code enforcement agent." The court responded by saying, "Okay. So that's local and it's municipal." The court did not inquire further. Neither party asked J.T. any questions.

¶ 7　　Defense counsel later challenged J.T. for cause under section 16-10-103(1)(k). Counsel did not ask the court to question J.T. about his employer.

¶ 8　　The trial court denied the challenge. The court reasoned that J.T. was "paid out of the county till," which is "separate and apart from the state." The court also stated that code enforcement is "separate and apart from being actual law enforcement. Code enforcement is slightly different."

¶ 9　　After Griego exhausted all his peremptory challenges, J.T. served on the jury.

### 2.　Standard of Review and Applicable Law

¶ 10　We review de novo a party's challenge for cause to a prospective juror for being a compensated employee of a public law enforcement agency. *People v. Carter*, 2015 COA 24M-2, ¶ 9. Reversal is required if the trial court erroneously denied the

challenge and the juror sat on the jury. *People v. Abu-Nantambu-El,* 2019 CO 106, ¶ 36.

¶ 11    Both the United States and Colorado Constitutions guarantee criminal defendants the right to a trial by an impartial jury. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. A biased juror sitting on the jury violates this right. *Abu-Nantambu-El,* ¶ 14.

¶ 12    Certain jurors are presumptively biased in criminal cases based on a statute or rule. *See* § 16-10-103(1)(b)-(i), (k); Crim. P. 24(b)(1)(II)-(IX), (XII). This includes any juror who is "a compensated employee of a public law enforcement agency." § 16-10-103(1)(k); Crim. P. 24(b)(1)(XII). A trial court must excuse such jurors if they are challenged for cause. *Abu-Nantambu-El,* ¶ 33.

¶ 13    A public law enforcement agency is "a division or subdivision of state or federal government that has the authority to investigate crimes and to arrest, prosecute, or detain suspected criminals." *People v. Bonvicini,* 2016 CO 11, ¶ 11. But "agencies responsible for enforcing civil regulations are not law enforcement agencies for the purpose of section 16-10-103(1)(k)." *Ma v. People,* 121 P.3d 205, 211 (Colo. 2005).

¶ 14     Unless a statute or case law already identifies an agency as a public law enforcement agency, "a trial court cannot be expected to divine [the agency's] nature as a law enforcement agency without having its primary function or purpose brought to the attention of the court." *People v. Speer*, 255 P.3d 1115, 1121 (Colo. 2011); *accord People v. Novotny*, 2014 CO 18, ¶ 13. This means that, besides making a timely objection, the challenging party must "provide the court, through examination of the prospective juror or request for judicial notice, with adequate evidence of the nature of the employing unit in question." *Speer*, 255 P.3d at 1121.

### 3.     The Trial Court Didn't Err by Denying the Challenge

¶ 15     Griego claims that the trial court erred by ruling that, for purposes of section 16-10-103(1)(k), a public law enforcement agency cannot be a municipal or county agency. The plain language of the statute appears to support Griego's position. It requires disqualification of a juror who is "a compensated employee of a public law enforcement agency or a public defender's office," without regard to the governmental level or the agency's source of funding. § 16-10-103(1)(k); *see also Bonvicini*, ¶ 16 (citing § 24-10-103(5), C.R.S. 2025, which includes counties as

subdivisions of the state, while distinguishing between public and nonpublic entities). But that is not the end of our inquiry.

¶ 16 The municipal funding source was not the sole basis for the court's ruling. Instead, as the People point out, the court also supported its ruling on the ground that J.T.'s code enforcement job was not the equivalent of a law enforcement position. Indeed, in reaching its conclusion, the court said that code enforcement is "separate and apart from being actual law enforcement. Code enforcement is slightly different." The People argue that this record does not support the conclusion that Juror J.T. worked for a law enforcement agency within the meaning of the statute. We agree with the People.

¶ 17 For starters, the sole information contained in the record about J.T.'s employment is his statement that he "work[s] for the City and County of Denver as a code enforcement agent." But "code enforcement agent" does not suggest investigating crimes or arresting, prosecuting, or detaining suspected criminals, *see Bonvicini*, ¶ 11; instead, it indicates the enforcement of civil regulations, *see Ma*, 121 P.3d at 211. So we have no basis to conclude that J.T.'s employer was an agency with authority "to

6

investigate crimes and to arrest, prosecute, or detain suspected criminals." *Bonvicini*, ¶ 11.  In fact, because J.T. didn't identify a specific division or agency within the City and County of Denver, we can't determine what unit within Denver government employed J.T. as a "code enforcement agent" — let alone determine if that unit acted with investigatory or prosecutorial authority.  *See id.*; *Speer*, 255 P.3d at 1121.

¶ 18     Griego counters that the lack of additional information about J.T.'s employer in the record does not mean that this issue was unpreserved or waived.  But the People don't challenge preservation, and we agree that Griego properly preserved this issue by objection.  *See Abu-Nantambu-El*, ¶ 37.

¶ 19     However, raising the objection didn't relieve Griego of his obligation to support his challenge to J.T. based on the nature of J.T.'s employer.  *See Speer*, 255 P.3d at 1121.  Indeed, the supreme court has directed that

> [i]t is . . . incumbent upon any party asserting
> a challenge for cause under [section
> 16-10-103(1)(k)] not only to make timely
> objection but to provide the court, through
> examination of the prospective juror or request
> for judicial notice, with adequate evidence of
> the nature of the employing unit in question.

*Id.* Griego neither asked for further examination of J.T. nor requested judicial notice of relevant information.[1] *See id.* As a result, he failed to satisfy his burden to develop an adequate record about the nature of J.T.'s employer, and we cannot divine the nature of an unspecified agency without such a record. *See id.*

¶ 20    In the absence of a developed record below, Griego points us to a number of websites and urges us to conclude that J.T. worked for "Denver Code Enforcement," which he asserts means "Neighborhood Inspection Services." This entity, he argues, has law enforcement functions. But these assertions also fail for the following reasons:

- There is no link to tie J.T.'s statement that he is a "code enforcement agent" to Griego's assumption that J.T. worked for "Denver Code Enforcement." Likewise, nothing links

---

[1] Griego also didn't provide the trial court or this court with any statutes or case law that expressly identify the agency at which a Denver "code enforcement agent" allegedly works. *Cf. People v. Novotny*, 2014 CO 18, ¶ 13 (holding that the defendant had no obligation to produce additional evidence where statute *expressly* identified and case law *expressly* acknowledged that the prospective juror's employer was a law enforcement agency).

"Denver Code Enforcement" or J.T. to "Neighborhood Inspection Services."

- The website Griego provides that lists Denver as having an agency named "Neighborhood Inspection Services" belongs to the Colorado Association of Code Enforcement Officials (CACEO). It is not a City and County of Denver website that expressly identifies a particular agency. *Code Enforcement Agencies*, Colo. Ass'n of Code Enf't Offs., https://perma.cc/4LBG-ZU6V. Further, the CACEO site links to the web page for Denver "Building Inspections" — not "Neighborhood Inspections" — for code enforcement.

- Griego's reference to the "Neighborhood Inspections" page on the City and County of Denver's website merely explains how "Neighborhood Inspections" conducts its work, with "roughly two dozen 'zoning and neighborhood inspectors.'" It does not identify an agency called "Denver Code Enforcement" or identify employees called "code enforcement agents." *Neighborhood Inspections*, City & County of Denver, https://perma.cc/G2VN-FW47.

- The same "Neighborhood Inspections" website states that the inspectors primarily enforce civil regulations by issuing escalating fines. *See Ma*, 121 P.3d at 211 (collecting cases holding that agencies responsible for enforcing civil regulations are not law enforcement agencies for the purpose of section 16-10-103(1)(k)).

- Griego's claim that "Denver Code Enforcement" engages in traditional law enforcement based on the municipal code disregards that the Denver municipal housing regulations largely refer to civil penalties, not criminal ones.[2] *See, e.g.*, Denv. Rev. Mun. Code § 27-27(2); *cf. Carter*, ¶ 20 (holding

---

[2] Griego relies on a single string citation to show that violations of Denver's building and zoning codes "constitute criminal offenses subject to *prosecution by the City Attorney*." (Emphasis added.) But because he does not provide individual citations or arguments to support his specific propositions — such as his claim that the alleged agency can issue criminal summons or impose criminal sanctions — we cannot divine the contours of his argument. And we will not search through the municipal regulations to develop his argument for him. *See* C.A.R. 28(a)(7)(B) (briefs must include "citations to the authorities and parts of the record on which the appellant relies"); *People v. Perez*, 2024 COA 94, ¶ 51 (declining to address undeveloped argument). In any event, the references in the string citation do not show that inspectors for a "Denver Code Enforcement" agency possess "the authority to investigate crimes and to arrest, prosecute, or detain suspected criminals." *People v. Bonvicini*, 2016 CO 11, ¶ 11.

that an agency's limited authority to arrest and investigate

assorted criminal violations did not supersede its primary

function of civil regulation).

- Nothing on the "Neighborhood Inspections" website suggests that Denver's "zoning and neighborhood inspectors" have "the authority to investigate crimes and to arrest, prosecute, or detain suspected criminals." *Bonvicini*, ¶ 11.

¶ 21    Thus, Griego's assertions based on the CACEO and Denver websites do not alter our conclusion. The trial court did not err on this record by denying the defense's challenge for cause to J.T.

### B.    Reasonable Doubt Jury Instruction

¶ 22    Griego contends that the court's jury instruction on reasonable doubt, which copied COLJI-Crim. E:03 (2022), lowered the prosecution's burden of proof.[3]  This is so, Griego argues,

---

[3] Because COLJI-Crim. E:03 (2022) is nearly identical to COLJI-Crim. E:03 (2023), we note that the Colorado Supreme Court recently granted certiorari on the issue of "[w]hether the trial court's jury instruction on burden of proof and reasonable doubt, based on the 2023 Model Criminal Jury Instruction . . . violated petitioner's federal and constitutional rights to due process and a fair trial." *Teran-Sanchez v. People*, No. 25SC148, 2025 WL 2506067 (Colo. Sept. 2, 2025) (unpublished order).

because the instruction used the phrases "firmly convinced" and "real possibility." Griego first claims that these phrases shifted the presumption of innocence by telling the jury to look for a real possibility of Griego's innocence in order to find him not guilty rather than starting with the presumption of innocence. He then claims that the instruction encouraged the jury to apply a clear and convincing standard of proof, rather than the beyond a reasonable doubt standard. We disagree.

1. Standard of Review and Applicable Law

¶ 23 "We review de novo whether a jury instruction impermissibly lowered the prosecution's burden of proof." *People v. Schlehuber*, 2025 COA 50, ¶ 15. "But as long as the instructions properly inform the jury of the law, the [trial] court has broad discretion to determine their form and style." *Id.* An instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error that requires reversal. *Tibbels v. People*, 2022 CO 1, ¶ 22.

¶ 24 "The Due Process Clause of the United States Constitution 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime

12

with which [they are] charged.'" *Id.* at ¶ 23 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)); *see* U.S. Const. amend. XIV, § 1. The reasonable doubt standard intrinsically relates to the presumption of innocence afforded to criminal defendants. *Tibbels*, ¶ 24.

¶ 25    The trial court must correctly instruct the jury on reasonable doubt. *Id.* at ¶ 25. The court does retain some flexibility in defining what constitutes reasonable doubt. *Id.* However, a reasonable doubt instruction that improperly lowers the prosecution's burden of proof violates a defendant's constitutional right to due process. *Johnson v. People*, 2019 CO 17, ¶ 13.

¶ 26    We employ a functional test to determine whether a trial court's instructions (including those given during the jury selection process) impermissibly lowered the prosecution's burden of proof. *Tibbels*, ¶ 42. In doing so, we "ask whether there is a reasonable likelihood that the jury understood the court's statements, in the context of the instructions as a whole and the trial record, to allow a conviction based on a standard lower than beyond a reasonable doubt." *Id.* at ¶ 43. We answer this question by considering the "nature of the statements, the context in which they were made,

any other explanations or instructions that the court may have provided, and, of course, the court's final jury charge." *Id.* at ¶ 41.

## 2. Additional Background

¶ 27 Before trial, Griego proposed a reasonable doubt jury instruction that relied on language from model instructions crafted before 2022. *See, e.g.*, COLJI-Crim. E:03 (2021). But the court accepted the prosecution's proposed reasonable doubt instruction that mirrored the then-updated language in COLJI-Crim. E:03 (2022).

¶ 28 The accepted instruction included the phrases "firmly convinced" and "real possibility" as part of the explanation of proof beyond a reasonable doubt, as shown in the following:

> Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is

14

highly probable, but it does not require proof with absolute certainty.

Proof beyond a reasonable doubt is proof that leaves you *firmly convinced* of the defendant's guilt. If you are *firmly convinced* of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a *real possibility* that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

(Emphasis added.)

¶ 29    The prosecution referenced the instruction during voir dire, and the court read the instruction to the jury at the end of the trial.

### 3.    The Trial Court Didn't Shift the Presumption of Innocence to a Presumption of Guilt

¶ 30    Griego asserts that the trial court erred by instructing the jury that it must be "firmly convinced" to convict because that encouraged the jury to consider Griego's guilt first and then consider any "real possibility" of innocence second. He argues that this wording violated his rights by unconstitutionally flipping the standard to a presumption of guilt, burdening Griego with producing evidence of his innocence.

¶ 31    Yet contrary to Griego's position, the instruction correctly told jurors that the presumption of innocence — that "[e]very person

15

charged with a crime is presumed innocent" — remained with Griego throughout the trial unless and until the evidence convinced the jury of his guilt beyond a reasonable doubt. The instruction further made clear that "[t]he the burden of proof is upon the prosecution."

¶ 32     Within this context, the phrase "firmly convinced" was conditioned on the *prosecution* providing "proof beyond a reasonable doubt" that established the "defendant's guilt." Thus, the instruction merely elaborated that *if* guilt was proved by the prosecution, *then* that proof of guilt must necessarily exclude "a real possibility" of the defendant's innocence. *See Schlehuber*, ¶ 33 (explaining that "'firmly convinced' . . . describes what it means to have no reasonable doubt" and "'real possibility' . . . contrasts that with what it means to have a reasonable doubt"). In other words, finding Griego guilty depended on the prosecution's proof *overcoming* any "real possibility" of Griego's presumed innocence; it didn't depend on Griego having to prove some possibility of his innocence. *See id.* at ¶ 34 (holding that "[t]he 'real possibility' language simply explained the threshold the prosecution must

16

overcome" to prove each element of the crime beyond a reasonable doubt).

¶ 33    Griego further argues that we must consider the validity of the model jury instruction the court gave against the backdrop of nonbinding authority from other jurisdictions expressing reservations over the use of "firmly convinced" and "real possibility" in reasonable doubt instructions. *See State v. Putz*, 662 N.W.2d 606, 612 (Neb. 2003); *Commonwealth v. Russell*, 23 N.E.3d 867, 877-78 (Mass. 2015); *United States v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987); *State v. Perez*, 976 P.2d 427, 442 (Haw. Ct. App. 1998), *aff'd in part and rev'd in part on other grounds*, 976 P.2d 379 (Haw. 1999).

¶ 34    But we disagree with the premise of Griego's argument. Colorado courts have already weighed in on this question. A division of this court has noted that the use of "real possibility" with the "firmly convinced" language "has been consistently approved by federal courts as an accurate expression of the reasonable doubt standard."[4]  *Schlehuber*, ¶ 30; *see also* COLJI-Crim. E:03 cmt. 1

---

[4] We recognize that *People v. Schlehuber*, 2025 COA 50, was not available to Griego at the time he submitted his briefs.

(2022) ("[N]o circuit court has found that a 'reasonable doubt' instruction which juxtaposes the terms 'firmly convinced' and 'real possibility' constitutes reversible error."). Accordingly, we are persuaded by the *Schlehuber* division's conclusion that the instruction provided "an accurate expression of the reasonable doubt standard." *Schlehuber*, ¶ 30; *see also People v. Melara*, 2025 COA 48, ¶ 32 (upholding the same model instruction as not unconstitutionally lowering the burden of proof). The out-of-state cases Griego cites don't alter that conclusion.

### 4. The Trial Court Didn't Lower the Standard of Proof Below Beyond a Reasonable Doubt

¶ 35 Griego next contends that the trial court's instruction that the jury must be "firmly convinced" of guilt suggested that the jury could have applied the civil standard of clear and convincing evidence to determine guilt instead of the beyond a reasonable doubt standard. According to Griego, the lowered standard of proof was made worse by the instruction omitting critical language used in prior model jury instructions — namely, that the jury make "a fair and rational consideration" of the evidence and base any doubts

"upon reason and common sense." *See, e.g.*, COLJI-Crim. E:03 (2021).

¶ 36      Griego's contention overlooks that the court's instruction defined the burden of proof as "*more than* proof that something is highly probable, but it does not require proof with absolute certainty." (Emphasis added.) Because the instruction required *more than* the clear-and-convincing standard of being highly probable used in civil cases, *see People v. Taylor*, 618 P.2d 1127, 1136 (Colo. 1980), the level of certainty required by the "firmly convinced" language did not lower the prosecution's burden of proof below that of beyond a reasonable doubt, *see Schlehuber*, ¶ 31 (holding that the weight of authority shows that phrase "firmly convinced" correctly connotes a standard "that is higher than 'highly probable' but stops short of absolute certainty").

¶ 37      And we reject Griego's contention that the absence of language about "reason, common sense, fairness, and rationality" further lowered the degree of certainty the instruction required. Simply put, "the instruction did not forbid or even dissuade the jurors from applying their common sense when considering the evidence . . . ,

19

including issues or requirements that the evidence failed to address."[5] *Melara*, ¶ 31.

¶ 38 Therefore, the court did not err by providing a reasonable doubt jury instruction based on the 2022 model instructions.

### III. Disposition

¶ 39 The judgment of conviction is affirmed.

CHIEF JUDGE ROMÁN and JUDGE LIPINSKY concur.

---

[5] We recognize that *People v. Melara*, 2025 COA 48, was not available to Griego at the time he submitted his briefs.